**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

---

**WISCONSIN PIPE TRADES HEALTH FUND, and**
**WISCONSIN PIPE TRADES 401(k) PLAN AND TRUST,**

          **Plaintiffs,**                            **Case No. 2:25-cv-00618**

     **vs.**

**MECHANICAL MASTERS, INC., a Wisconsin**
**Corporation,**

          **Defendant.**

---

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
### MOTION FOR SUMMARY JUDGMENT

---

NOW COME Plaintiffs, the WISCONSIN PIPE TRADES HEALTH FUND ("Health Fund") and the WISCONSIN PIPE TRADES 401(k) PLAN AND TRUST ("401(k) Plan") (collectively, the "Funds"), by and through their attorneys, JOHNSON & KROL, LLC, and in support of their Motion for Summary Judgment against Defendant, MECHANICAL MASTERS, INC. ("Mechanical Masters"), submit this Memorandum in Support of their Motion for Summary Judgment pursuant to Civil L.R. 56(b)(1)(A):

### INTRODUCTION

On April 29, 2025, Plaintiffs filed their Complaint against Defendant pursuant to 29 U.S.C. §§ 185, 1132 and 1145 alleging a breach of the Labor Agreements ("Labor Agreements") with the Plumbers and Steamfitters Local Union 118 of the United Association of Journeymen & Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ("Union"). (Dkt. No. 1). The legal record demonstrates binding assent to the agreements, undisputed

delinquencies confirmed by audits, and defense admissions that eliminate any genuine dispute of material fact.  The agreements described below and ERISA mandate contributions, liquidated damages, interest, and attorneys' fees upon judgment, and the revised audit calculations reflect Defendant's own testimony and discovery, warranting entry of judgment for Plaintiffs.

**SUMMARY OF MATERIAL FACTS**

Mechanical Masters agreed to be bound by the Labor Agreements entered into by various employer associations and the Union in effect from June 2007 through May 2013. (Plaintiffs' Proposed Statement of Material Facts ("PPSOF"), ¶ 1).  In 2023, the Union and the Mechanical Contractors, S E, Inc. entered into a Labor Agreement in effect for the period of June 1, 2023 to May 31, 2025.  (PPSOF, ¶ 2).  Mechanical Masters never indicated any intent nor took any action to terminate its signatory status under the Labor Agreement effective June 1, 2023 through May 31, 2025 ("2023-2025 Labor Agreement"), or under any prior Labor Agreement with the Union, including the June 2007 through May 2013 Labor Agreement. (PPSOF, ¶ 3).  Mechanical Masters admits that it "had previously reported" on employees' behalf to the Funds.  (PPSOF, ¶ 4).  Pursuant to the 2023-2025 Labor Agreement, employers are bound to the Health Fund's Trust Agreement.  (PPSOF, ¶ 5).

The Labor Agreements and Trust Agreement require Mechanical Masters to make monthly payments to the Health Fund and 401(k) Plan for each hour worked by its bargaining unit employees within the Trade and Territorial Jurisdiction of the Union ("covered work") pursuant to the Labor Agreements at the negotiated rate.  (PPSOF, ¶ 6).  Pursuant to the 2023-2025 Labor Agreement, and Trust Agreement, employers who fail to submit contributions to the Funds are responsible for payment of liquidated damages of twenty percent (20%) on all untimely remitted contributions and interest of one and one-half percent (1.5%) per month on all untimely remitted

contributions; employers are additionally responsible to pay the Funds' attorneys' fees and court costs incurred in the pursuit of collecting contributions.  (PPSOF, ¶ 7).

In response to the Funds' demands to produce records for a payroll compliance audit for the period of January 1, 2023, through November 30, 2024, Mechanical Masters only provided detailed payroll records for employees (hereinafter referred to as the "Reported Employees") it identified as performing covered work under the Labor Agreements.  (PPSOF, ¶ 8).  Said audit (the "Initial Audit"), conducted by the Funds' independent auditor, revealed that Mechanical Masters failed to pay contributions on behalf of its Reported Employees which resulted in the assessment of liquidated damages and interest, in the aggregate amount of $23,325.11, as itemized below:

| Fund: | Contributions: | Liquidated Damages: | Interest: | Total: |
|---|---|---|---|---|
| Health Fund | $18,302.88 | $3,034.09 | $609.34 | **$21,946.31** |
| 401(k) Plan | $1,138.45 | $200.15 | $40.20 | **$1,378.80** |
| **TOTAL:** | **$19,441.33** | **$3,234.24** | **$649.54** | **$23,325.11** |

(PPSOF, ¶ 9). Mechanical Masters admits that it "failed to pay contributions on behalf of its [R]eported [E]mployees" and "owe[s] the audit findings for its Reported Employees."  (PPSOF, ¶ 10).

The payroll compliance audit for the period of January 1, 2023, through November 30, 2024 also revealed that Mechanical Masters employed approximately 15 other individuals during the relevant period (hereafter referred to as the "Unreported Employees").  (PPSOF, ¶ 11).  The Unreported Employees are employees of Mechanical Masters.  (PPSOF, ¶ 12).

A second audit ("Second Audit") was performed for Mechanical Masters' Unreported Employees.  (PPSOF, ¶ 13).  Initially, the audit included findings for 15 Unreported Employees. (PPSOF, ¶ 11).  However, based on discovery responses from Mechanical Masters, the Second

Audit was revised to remove ten (10) employees. (PPSOF, ¶ 14). As to the remaining five (5) Unreported Employees, namely (a) James Jorgensen, (b) Jack Shenkenberg, (c) Owen Shenkenberg, (d) Aydan Klamm, and (e) Kadin Villa, Mechanical Masters admits that they were engaged in covered work for the following percentage of their time:

| Employee Name: | Percentage of Work Performed under Labor Agreement: |
|---|---|
| James Jorgensen | 50% |
| Jack Shenkenberg | 50% |
| Owen Shenkenberg | 50% |
| Aydan Klamm | 40% |
| Kadin Villa | 50% |

(PPSOF, ¶ 15). As a result of Mechanical Masters' admissions, the Funds' auditor revised the Second Audit Report to reduce the hours worked by the following five (5) employees as follows:

| Employee Name: | Reduction in Number of Hours Included in Audit: |
|---|---|
| James Jorgensen | 50% |
| Jack Shenkenberg | 50% |
| Owen Shenkenberg | 50% |
| Aydan Klamm | 60% |
| Kadin Villa | 50% |

(PPSOF, ¶ 16).

Following the removal of the ten (10) employees completely and the reduction in hours for the five (5) other employees pursuant to the percentages above, the revised Second Audit revealed the following amounts owed on behalf of (a) James Jorgensen, (b) Jack Shenkenberg, (c) Owen Shenkenberg, (d) Aydan Klamm, and (e) Kadin Villa, as itemized below:

| Fund: | Contributions: | Liquidated Damages: | Interest: | Total: |
|---|---|---|---|---|
| Health Fund | $67,139.27 | $13,427.85 | $12,363.48 | **$92,930.60** |
| 401(k) Plan | $2,717.76 | $543.54 | $395.77 | **$3,657.07** |
| **TOTAL:** | **$69,857.03** | **$13,971.39** | **$12,759.25** | **$96,587.67** |

(PPSOF, ¶ 17).

<u>**STANDARD OF REVIEW**</u>

Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or other supporting documents, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cox v. Acme Health Serv., Inc.*, 55 F.3d 1304, 1308 (7th Cir. 1995). Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the [opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986); see *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 1001 (7th Cir. 1992).

A party seeking summary judgment always bears the initial burden of informing the district court of the basis for its motion. *Celotex*, 477 U.S. at 323. Where the nonmoving party has the burden of proof on a particular issue, that initial burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. The moving party need not support its motion with affidavits or materials negating the opponent's claim in such circumstances. *Id.* at 323. Once the initial burden is met,

the nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. If the nonmoving party fails to do so, "[t]he moving party is 'entitled to a judgment as a matter of law.'" *Id.* at 323. Indeed, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289 88 S.Ct. 1575, 1592 (1968)).

## ARGUMENT

As discussed below, Mechanical Masters has been bound to the Labor Agreement between the Union and the Mechanical Contractors S.E., Inc. since June 2007. As a result, it is obligated to pay contributions to the Funds on behalf of its covered employees to the Funds. With respect to the Initial Audit, it merely restates the hours reported by Mechanical Masters in the first place, and Mechanical Masters admits that it failed to pay those contributions to the Funds. As to the Second Audit, Mechanical Masters admits that the five (5) employees included in the revised audit report were performing covered work for the percentage of time included in the audit findings. Accordingly, pursuant to Section 502(g)(2) of ERISA, the Funds are entitled to a judgment for the unpaid contributions, along with the resulting liquidated damages and interest, plus the Funds' attorneys' fees and costs.

1. **MECHANICAL MASTERS IS BOUND TO THE LABOR AND TRUST AGREEMENTS AND BREACHED SAID AGREEMENTS BY FAILING TO REMIT CONTRIBUTIONS**

In June 2007, Mechanical Masters agreed to be bound by the Labor Agreement with the Union in effect from June 2007 through May 2013. (PPSOF, ¶ 2). While Mechanical Masters did not sign the 2023-2025 Labor Agreement, Mechanical Masters admits that it "had previously reported" on employees' behalf to the Funds, including pursuant to the 2023-2025 Labor Agreement. (PPSOF, ¶ 4). Mechanical Masters never indicated any intent nor took any action to

terminate its signatory status under the Labor Agreement effective June 1, 2023 through May 31, 2025, or under any prior Labor Agreement with the Union. (PPSOF, ¶ 3).

It is well-established that an employer's conduct, such as reporting and remitting contributions consistent with a labor agreement, can establish binding assent. *See Bricklayers Local 21 of Illinois Apprenticeship and Training Program v. Banner Restoration, Inc.*, 385 F.3d 761 (7th Cir. 2004) (holding that a "collective bargaining agreement is not dependent on the reduction to writing of the parties' intention to be bound,…rather [a]ll that is required is conduct manifesting an intention to abide and be bound by the terms of an agreement") (internal citations removed); *Line Construction Benefit Fund v. Allied Electrical Contractors, Inc.*, 591 F.3d 576 (7th Cir. 2010) (holding that assent can also be established through other evidence, including most importantly conduct manifesting agreement, such as "the payment of union wages, the remission of union dues, the payment of fringe benefit contributions, the existence of other agreements evidencing assent and the submission of the employer to union jurisdiction").

Here, Mechanical Masters reported hours to the Funds pursuant to the Labor Agreement and admits that it owes those monies. (PPSOF, ¶ 10). Furthermore, Mechanical Masters complied with the payroll compliance audit before the Funds filed suit. (PPSOF, ¶ 8). Accordingly, there is no doubt that Mechanical Masters is obligated to comply with the contribution obligations in the Labor Agreement. Simply put, Mechanical Masters' only real argument is whether it is obligated to pay contributions on behalf of the five (5) employees in the revised Second Audit report.

Furthermore, there is no doubt that Mechanical Masters breached the Labor Agreement by failing to pay contributions on behalf of its employees performing covered work.

**2.** **THE INITIAL AUDIT AND THE REVISED SECOND AUDIT CONCLUSIVELY ESTABLISH THE AMOUNTS OWED BY MECHANICAL MASTERS.**

    **a.** **The Initial Audit for the Period of January 1, 2023 through November 30, 2024 Revealed that the Defendant Owes Contributions to the Funds.**

The Initial Audit conducted by the Funds' independent auditor revealed that Mechanical Masters failed to pay contributions on behalf of its Reported Employees the amount of $19,441.33, as itemized below:

| Fund: | Contributions: |
|---|---|
| Health Fund | $18,302.88 |
| 401(k) Plan | $1,138.45 |
| **TOTAL:** | **$19,441.33** |

(PPSOF, ¶ 9). In its Answer, Mechanical Masters admits that it "failed to pay contributions on behalf of its reported employees" and "owe[s] the audit findings for its Reported Employees." (PPSOF, ¶ 10). Accordingly, it is undisputed that Mechanical Masters owes the contributions revealed by the Initial Audit.

    **b.** **The Revised Second Audit for the Period of January 1, 2023 through November 30, 2024 Revealed that the Defendant Owes Contributions to the Funds.**

As discussed *supra*, the revised Second Audit includes hours for five (5) employees, namely, (a) James Jorgensen, (b) Jack Shenkenberg, (c) Owen Shenkenberg, (d) Aydan Klamm, and (e) Kadin Villa, that Mechanical Masters performed covered work for various percentages of time. (PPSOF, ¶ 15). Specifically, based on the percentage of time that each of the five (5) employees performed covered work, the audit revealed that Mechanical Masters owes $69,857.03 in contributions on their behalf, as itemized below:

| Fund: | Contributions: |
|---|---|
| Health Fund | $67,139.27 |
| 401(k) Plan | $2,717.76 |
| **TOTAL:** | **$69,857.03** |

(PPSOF, ¶ 17). Mechanical Masters admits that these five (5) employees performed covered work. Accordingly, it is undisputed that Mechanical Masters owes the contributions revealed by the revised Second Audit.

**3. THIS COURT SHOULD REQUIRE MECHANICAL MASTERS TO PAY LIQUIDATED DAMAGES AND INTEREST AS WELL AS PLAINTIFFS' ATTORNEYS' FEES AND COURT COSTS**

Mechanical Masters is liable for the liquidated damages and interest to the Funds as a result of its late payment of contributions. Pursuant to the 2023-2025 Labor Agreement, employers who fail to submit contributions to the Funds are responsible for payment of liquidated damages of twenty percent (20%) on all untimely remitted contributions and interest of one and one-half percent (1.5%) per month on all untimely remitted contributions. (PPSOF, ¶ 7). Additionally, Section 502(g)(2) of ERISA provides in relevant part as follows;

> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court *shall* award the plan—
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>   (i)  interest on the unpaid contributions, or
>   (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

29 U.S.C. § 1132(g)(2) (emphasis added).

Here, the Funds' auditor calculated that the contribution underpayments revealed by the First Audit resulted in $3,234.24 in liquidated damages and $649.54 in interest, as itemized below:

| Fund: | Liquidated Damages: | Interest: |
|---|---|---|
| Health Fund | $3,034.09 | $609.34 |
| 401(k) Plan | $200.15 | $40.20 |
| **TOTAL:** | **$3,234.24** | **$649.54** |

(PPSOF, ¶ 9). Likewise, Funds' auditor calculated that the contribution underpayments revealed by the revised Second Audit resulted in $13,971.39 in liquidated damages and $12,759.25 in interest, as itemized below:

| Fund: | Liquidated Damages: | Interest: |
|---|---|---|
| Health Fund | $13,427.85 | $12,363.48 |
| 401(k) Plan | $543.54 | $395.77 |
| **TOTAL:** | **$13,971.39** | **$12,759.25** |

(PPSOF, ¶ 17). Since it is undisputed that the contributions are owed, ERISA mandates that this Court award the liquidated damages and interest totaling $30,614.42.

Furthermore, the Labor Agreement provides that Mechanical Masters shall be liable for the Funds' attorneys' fees and costs incurred in pursuit of the unpaid contributions. (PPSOF, ¶ 7). In addition, Section 502(g)(2)(D) of ERISA requires this Court to award "reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D).

In this case, Plaintiffs were required to file a lawsuit to obtain payment of the contributions, liquidated damages, and interest owed by Mechanical Masters as revealed by the audits. To date, the Funds have expended $20,385.11 in reasonable attorneys' fees and costs. (PPSOF, ¶ 18). Therefore, this Court should award the Funds a judgment for attorneys' fees and court costs in the amount of $20,385.11.

## CONCLUSION

The Labor Agreements establish Mechanical Masters' obligation to make monthly contributions for all covered work and to pay 20% liquidated damages and 1.5% monthly interest on untimely remittances. Under Rule 56, once Plaintiffs have shown the absence of a dispute and grounded their figures in the Defendant's own admissions and evidence, the nonmoving party must designate specific contrary facts to create a triable issue. Fed. R. Civ. P. 56. Mechanical Masters

cannot do so here because it admits that it failed to pay the hours revealed by the Initial Audit and the revised Second Audit is based on Mechanical Masters' admissions that the five (5) employees in question were performing covered work for various percentages of their time worked. Accordingly, there is no genuine issue for trial as to either the Initial Audit nor the revised Second Audit, and judgment should be entered in favor of Plaintiffs.

Respectfully Submitted,

**WISCONSIN PIPE TRADES HEALTH FUND,** *et al.*

/s/ Jeffrey A. Krol – IL Bar # 6300262
*One of Plaintiffs' Attorneys*
JOHNSON & KROL, LLC
141 West Jackson Boulevard, Suite 2055
Chicago, Illinois 60604
(312) 757-5465
jeffkrol@johnsonkrol.com

WISCONSIN PIPE TRADES HEALTH FUND, and
WISCONSIN PIPE TRADES 401(k) PLAN AND TRUST,

      Plaintiffs,        Case No. 2:25-cv-00618

  vs.

MECHANICAL MASTERS, INC., a Wisconsin
Corporation,

      Defendant.

## PLAINTIFFS' PROPOSED STATEMENT OF MATERIAL FACTS

NOW COME Plaintiffs, the WISCONSIN PIPE TRADES HEALTH FUND ("Health Fund") and the WISCONSIN PIPE TRADES 401(k) PLAN AND TRUST ("401(k) Plan") (collectively, the "Funds"), by and through their attorneys, JOHNSON & KROL, LLC, and in support of their Motion for Summary Judgment against Defendant, MECHANICAL MASTERS, INC. ("Mechanical Masters"), submit this Statement of Proposed Material Facts pursuant to Civil L.R. 56(b)(1)(C):

1. Mechanical Masters agreed to be bound by the Labor Agreements entered into by various employer associations and the Union in effect from June 2007 through May 2013. (Mechanical Masters' signatory page to the 2007-2013 Labor Agreement; **Ex.1**).

2. The Union and the Mechanical Contractors, S E, Inc. entered into a Labor Agreement in effect for the period of June 1, 2023 to May 31, 2025.  (2023-2025 Labor Agreement; **Ex. 2**).

3. Mechanical Masters never indicated any intent nor took any action to terminate its signatory status under the Labor Agreement effective June 1, 2023 through May 31, 2025, or under any prior Labor Agreement with the Union. (Defendant's Responses to Plaintiffs' First Requests for Production ¶ 1; **Ex. 3**).

4. Mechanical Masters admits that it "had previously reported" on employees' behalf to the Funds. (Mechanical Masters' Answer, ¶ 15; **Ex. 4**).

5. The 2023-2025 Labor Agreement binds employers to the Health Fund's Agreement and Declaration of Trust ("Trust Agreement"). (2023-2025 Labor Agreement § 16.3; **Ex.2**).

6. The Labor Agreements and Trust Agreement require Mechanical Masters to make monthly payments to the Health Fund and 401(k) Plan for each hour worked by its bargaining unit employees within the Trade and Territorial Jurisdiction ("covered work") of the Union pursuant to the Labor Agreements at the negotiated rate. (2023-2025 Labor Agreement §§ 16.1, 28.1, 28.2; **Ex.2**).

7. Pursuant to the 2023-2025 Labor Agreement, and Trust Agreement, employers who fail to submit contributions to the Funds are responsible for payment of liquidated damages of twenty percent (20%) on all untimely remitted contributions and interest of one and one-half percent (1.5%) per month on all untimely remitted contributions; employers are additionally responsible to pay the Funds' attorneys' fees and court costs incurred in the pursuit of collecting contributions. (2023-2025 Labor Agreement §§ 16.4, 28.3; **Ex.2**).

8. In response to the Funds' demands to produce records for a payroll compliance audit for the period of January 1, 2023, through November 30, 2024, Mechanical Masters only provided detailed payroll records for employees (hereinafter referred to as the "Reported Employees") it identified as performing covered work under the Labor Agreements.

(Mechanical Masters' Answer, ¶ 15; **Ex. 4**).

9.      Said audit (the "Initial Audit"), conducted by the Funds' independent auditor, revealed that Mechanical Masters failed to pay contributions on behalf of its Reported Employees which resulted in the assessment of liquidated damages and interest, in the aggregate amount of $23,325.11, as itemized below:

| Fund: | Contributions: | Liquidated Damages: | Interest: | Total: |
|---|---|---|---|---|
| Health Fund | $18,302.88 | $3,034.09 | $609.34 | **$21,946.31** |
| 401(k) Plan | $1,138.45 | $200.15 | $40.20 | **$1,378.80** |
| **TOTAL:** | **$19,441.33** | **$3,234.24** | **$649.54** | **$23,325.11** |

(Certification of Randy Rosenmerkel, ¶ 5 | Initial Audit Report, *Ex. I* to Cert. of Rosenmerkel; **Ex. 5**).

10.     Mechanical Masters admits that it "failed to pay contributions on behalf of its [R]eported [E]mployees" and "owe[s] the audit findings for its Reported Employees."  (Mechanical Masters' Answer, ¶¶ 16, 17; **Ex. 4**).

11.     The payroll compliance audit for the period of January 1, 2023, through November 30, 2024 also revealed that Mechanical Masters employed approximately 15 other individuals during the relevant period (hereafter referred to as the "Unreported Employees") whom it failed to report in the Initial Audit.  (Cert. of Rosenmerkel ¶ 6; **Ex. 5**).

12.     Defendant admits that the Unreported Employees are employees of Mechanical Masters. (Mechanical Masters' Answer, ¶¶ 22-28 & 30-33; **Ex. 4**).

13.     A second audit ("Second Audit") was performed for Mechanical Masters' Unreported Employees.  (Cert. of Rosenmerkel ¶¶ 6-9; **Ex. 5**). (Mechanical Masters' Answer, ¶ 35; **Ex. 4**).

14. Based on Mechanical Masters' responses that (a) Evan Lonergan, (b) Scott Darville, (c) Ryan Shenkenberg, (d) Martin Gronka, (e) Ethan Burgan, (f) Francis Wietrzak, (g) Jessica Hartman, (h) Samantha Serak, (i) Branda Wade, and (j) Stacey Hamilton never performed bargaining unit work, Plaintiffs' auditor removed those individuals from the Second Audit. (Mechanical Masters' Answers to Plaintiffs' First Set of Interrogatories ¶¶ 3-24; **Ex. 6**); (Mechanical Masters' Answers to Plaintiffs' Second Set of Interrogatories ¶¶ 2-10; **Ex. 7**); (Cert. of Rosenmerkel ¶¶ 6-9; **Ex. 5**).

15. As to the remaining five (5) Unreported Employees, namely (a) James Jorgensen, (b) Jack Shenkenberg, (c) Owen Shenkenberg, (d) Aydan Klamm, and (e) Kadin Villa, Mechanical Masters admits that they were engaged in covered work for the following percentage of their time:

| Employee Name: | Percentage of Work Performed under Labor Agreement: |
|---|---|
| James Jorgensen | 50% |
| Jack Shenkenberg | 50% |
| Owen Shenkenberg | 50% |
| Aydan Klamm | 40% |
| Kadin Villa | 50% |

(Mechanical Masters' Answers to Plaintiffs' First Set of Interrogatories ¶¶ 8, 12, & 14; **Ex. 6**); (Mechanical Masters' Answers to Plaintiffs' Second Set of Interrogatories ¶¶ 4 & 6; **Ex. 7**).

16. As a result of Mechanical Masters' admissions, the Funds' auditor revised the Second Audit Report to reduce the hours worked by the following five (5) employees as follows :

| Employee Name: | Reduction in Number of Hours Included in Audit: |
|---|---|
| James Jorgensen | 50% |
| Jack Shenkenberg | 50% |
| Owen Shenkenberg | 50% |
| Aydan Klamm | 60% |
| Kadin Villa | 50% |

(Cert. of Rosenmerkel ¶ 8; **Ex. 5**).

17. As a result of (a) the removal of the ten (10) employees completely, and (b) the reduction in hours for the five (5) other employees, the totals for the Second Audit report have decreased significantly from $268,307.52 to $96,587.67, as itemized below:

| Fund: | Contributions: | Liquidated Damages: | Interest: | Total: |
|---|---|---|---|---|
| Health Fund | $67,139.27 | $13,427.85 | $12,363.48 | **$92,930.60** |
| 401(k) Plan | $2,717.76 | $543.54 | $395.77 | **$3,657.07** |
| **TOTAL:** | **$69,857.03** | **$13,971.39** | **$12,759.25** | **$96,587.67** |

(Cert. of Rosenmerkel, ¶ 9 | Initial Audit Report, *Ex. II* to Cert. of Rosenmerkel; **Ex. 5**).

18. To date, the Funds expended $20,385.11 in reasonable attorneys' fees and costs. (Affidavit of Spencer Ganer; **Ex. 8**).

Respectfully Submitted,

**WISCONSIN PIPE TRADES HEALTH FUND,** *et al.*

/s/ Jeffrey A. Krol – IL Bar # 6300262
*One of Plaintiffs' Attorneys*
JOHNSON & KROL, LLC
141 West Jackson Boulevard, Suite 2055
Chicago, Illinois 60604
(312) 757-5465
jeffkrol@johnsonkrol.com